IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | | |
|---|---|---|
| **ROBERT W. STEPHENSON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:15-cv-1409** |
| | ) | |
| **KENNETH NASSIF, *et al.*,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This seven-count state tort action between non-diverse parties was initially filed in state court but then timely removed by defendants pursuant to 28 U.S.C. §§ 1446(a) and 1442(a)(1), the so-called "federal officer" removal statute. Plaintiff now seeks a remand on the ground that this removal basis does not apply in this case.

Because the issues raised have been fully briefed, the matter is now ripe for disposition. Oral argument is unnecessary and dispensed with as it would not aid the decisional process. For the reasons that follow, federal officer removal jurisdiction is appropriate, and the motion to remand must therefore be denied.

## I.

The pertinent facts as they are reflected in the Amended Complaint and the parties' briefs may be succinctly stated. Plaintiff Robert Stephenson, a Virginia resident, is a former employee of defendant Alliance Consulting Group International, LLC ("Alliance"), a small consulting company that performs classified work for the Department of Defense. At all relevant times, defendant Kenneth Nassif, a Virginia resident, served as the Managing Director of Alliance.

Plaintiff commenced his employment with Alliance in April 2014. Thereafter, on October 17, 2014, plaintiff approached Nassif and informed Nassif that another company, Synchron, had

1

offered plaintiff employment. Plaintiff attempted, without success, to use this offer from Synchron as leverage for a pay raise at Alliance. When this attempt failed, plaintiff resigned from Alliance and joined Synchron. A few days later, on October 21, plaintiff received notice from Synchron's Facility Security Officer ("FSO") that plaintiff had a "red flag" on the Department of Defense Joint Personnel Adjudication System ("JPAS") indicating a "pending incident report."[1] Am. Comp. ¶ 14. In essence, JPAS is an electronic personnel database maintained by the Department of Defense for the purpose of collecting reports touching on a person's ability to use and to handle classified information. Although the parties do not dispute that the pending incident report that caused plaintiff's "red flag" was filed by Nassif, the parties sharply dispute the motivation for filing the report.

In this respect, defendants allege that following plaintiff's resignation, plaintiff's work computer presented with a virus that encrypted various programs and data and required the payment of a ransom before decryption was possible. Even after paying the ransom, Alliance was able to recover only some of the affected programs and data. Because plaintiff and Nassif were the only Alliance employees working at this particular office at the time, Nassif concluded that plaintiff had installed the virus on the computer on or about October 17 before departing from Alliance. In light of this conclusion—which, if true, would constitute a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, and the Virginia Computer Crimes Act, Va. Code § 18.2-152.4—Nassif, who is Alliance's FSO, reported his suspicion to the

---

[1] Pursuant to the Department of Defense's National Industrial Security Program Operating Manual ("NISPOM"), defense contractors that receive classified information from government agencies are required to appoint an FSO with appropriate security clearance and training who then supervises and directs the security measures that the Department of Defense requires for classified information. *See* NISPOM § 1-201.

Department of Defense in the form of a JPAS incident report and to the local police department, as well.

Plaintiff insists he is innocent in the computer virus affair and alleges that defendants made false reports with actual malice in retaliation for plaintiff's resignation from Alliance. Moreover, plaintiff alleges that because of defendants' false incident report, plaintiff has been unable to obtain the necessary security clearances to perform work in his field. In this regard, plaintiff alleges that Synchron placed plaintiff on administrative leave in March 2015. He also alleges that a new company that had extended an offer of employment to him in June 2015 rescinded the offer because of the incident report on plaintiff's record.

Plaintiff filed the instant action in the Circuit Court for the City of Alexandria, Virginia, on October 19, 2015. Plaintiff's Amended Complaint alleges seven state law causes of action:

(i) slander, libel, and defamation stemming from the filing of the JPAS incident report;

(ii) slander, libel, and defamation stemming from the filing of the police report;

(iii) tortious interference with contract;

(iv) negligence in filing the JPAS incident report;

(v) negligence in filing the police report;

(vi) intentional infliction of emotional distress through filing the JPAS incident report; and

(vii) intentional infliction of emotional distress through filing the police report.

On October 28, 2015, defendants filed a timely notice of removal claiming federal jurisdiction under § 1442(a)(1). Specifically, defendants contend that the submission of the JPAS incident report was done pursuant to a mandatory federal requirement that affords absolute immunity from state tort liability, thus warranting federal jurisdiction. Plaintiff, in turn, filed a motion to remand. Shortly after the briefing on the motion was submitted, the parties consented

3

to the jurisdiction of a magistrate judge. Referral to the magistrate judge was deferred pending resolution of the jurisdictional question presented in the motion to remand, namely whether defendants may properly avail themselves of federal officer jurisdiction under § 1442(a)(1).

## II.

In general, the firmly established "well-pleaded complaint" rule precludes using a federal defense as a basis for federal question jurisdiction for removal purposes. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Yet, § 1442(a)(1) creates an exception to this rule. *See Mesa v. California*, 489 U.S. 121, 136 (1989) ("[Section 1442(a)] merely serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged."). In relevant part, § 1442(a)(1) provides that "[a] civil action…that is commenced in a State court" may be removed to federal court if the action is against "any officer (or any person acting under that officer) of the United States…for or relating to any act under color of such office." Importantly, by its plain language § 1442(a)(1) provides for the removal of an entire "civil action," so removal is not limited only to specific qualifying claims. *Accord* 14C Wright & Miller, Federal Practice and Procedure § 3726 at 275 (2009) ("Because Section 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency, the section creates a species of statutorily-mandated supplemental subject-matter jurisdiction.").

In a leading case on the scope and meaning of § 1442(a)(1), the Supreme Court in *Mesa* elucidated what the federal officer removal statute requires. Courts in this district have uniformly concluded that the Supreme Court's *Mesa* decision establishes four necessary elements that a defendant must show in order to qualify for removal under § 1442(a)(1): (i) that the defendant is a "person" as used in the statute, (ii) that the defendant acted pursuant to a federal officer's

4

directions, (iii) a causal nexus between the defendant's actions under color of a federal office and the plaintiff's claims, and (iv) the existence of a colorable federal defense.[2] Although plaintiff does not contest that defendants are "persons" within the meaning of § 1442(a)(1), the remaining requirements for removal are in dispute.

### A.

The first statutory requirement in issue—that a defendant acted pursuant to a federal officer's directions—is plainly met. The Supreme Court has made it clear that § 1442(a)(1) must be "liberally construed." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). In light of this principle, the Supreme Court has noted that the "acting under" language in § 1442(a)(1) is "broad" but "not limitless." *Id.* Thus, in *Watson* the Supreme Court held that mere compliance with detailed federal regulations as part of "the usual regulator/regulated relationship" does not give rise to federal officer jurisdiction. *Id.* at 157. This is so, the Supreme Court reasoned, because "acting under" must involve "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152 (emphasis in original). Moreover, the Supreme Court observed that the purpose of § 1442(a)(1) is to overcome the threat of state-court prejudice against federal activity; mere compliance with federal law does not ordinarily create a risk of such prejudice or of subjection to a state-court lawsuit "likely to disable federal officials from taking necessary action designed to enforce federal law." *Id.* In light of *Watson*, it is pellucid that the broad language of § 1442(a)(1) must be applied in a manner that effectuates the central congressional policy of securing a federal forum for persons who assist the federal government in a manner that

---

[2] *See, e.g., L-3 Commc'ns Corp. v. Serco, Inc.*, 39 F. Supp. 3d 740, 745-46 (E.D. Va. 2014); *CRGT, Inc. v. Northrop Grumman Sys. Corp.*, No. 12-cv-554, 2012 WL 3776369, at *1 (E.D. Va. Aug. 28, 2012); *Epperson v. Northrop Grumman Sys. Corp.*, No. 05-cv-2953, 2006 WL 90070, at *2 (E.D. Va. Jan. 11, 2006).

risks the imposition of state law liability. The principles of *Watson*, applied here, point

persuasively to the conclusion that defendant Alliance was "acting under" a federal officer when

it submitted the JPAS incident report concerning plaintiff.[3]

Defendants contend that the submission of the JPAS incident report was done pursuant to

the Department of Defense's NISPOM, which was issued by the Secretary of Defense pursuant

to presidential executive order.[4] NISPOM imposes certain security obligations on contractors

that receive access to classified material. As relevant here, NISPOM § 1-302(a) provides that

"[c]ontractors shall report adverse information coming to their attention concerning any of their

cleared employees." In defendants' view, this rule represents a specific and mandatory

instruction by the Department of Defense, and compliance with NISPOM constitutes "acting

under" a federal officer, namely the Secretary of Defense. Plaintiff responds by arguing that the

relevant NISPOM reporting regulation is not sufficiently detailed to rise to the level of an

instruction from a federal officer. According to plaintiff, Department of Defense guidance as to

what constitutes "adverse information" is so broad that the NISPOM regulation at issue leaves

contractors with "considerable discretion." P. Reply at 6. The remainder of plaintiff's objection

that defendants were not "acting under" a federal officer is essentially a challenge to defendants'

---

[3] It is worth noting that the plain language of NISPOM § 1-302(a) applies to "[c]ontractors," which surely imposes an obligation on defendant Alliance. Whether defendant Nassif, as an employee generally or as FSO specifically, is similarly subject to a mandatory obligation is an issue that need not be reached or decided here. As long as defendant Alliance qualifies for federal officer removal, the entire "civil action" is removable. *See* Wright & Miller, *supra*, § 3726 at 275 ("Because Section 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency, the section creates a species of statutorily-mandated supplemental subject-matter jurisdiction.").

[4] Exec. Order No. 12,829, 58 Fed. Reg. 3,479 (Jan. 6, 1993).

evidence. *Id.* at 6-11. That is, plaintiff argues that defendants did not actually have "adverse information" about plaintiff and therefore were not acting pursuant to NISPOM § 1-302(a).

Plaintiff's arguments fail for at least three reasons. First, contrary to plaintiff's characterization, the broad definition of "adverse information" does not afford overly substantial discretion. To be sure, the Department of Defense defines "adverse information" broadly as "any information that negatively reflects on the integrity or character of a cleared employee, that suggests that his or her ability to safeguard classified information clearly may be impaired, or that his or her access to classified information clearly may be in the interest of national security."[5] But the plain language of NISPOM § 1-302(a) is mandatory, and by defining "adverse information" broadly the Department of Defense creates a mandatory duty to report broadly. There is no discretion not to report, and a contractor's failure to report something that falls within the broad reach of "adverse information" is not an exercise of discretion but a breach of the mandatory reporting obligation.

Second, in the absence of federal contracting, the Department of Defense would need to carry out all activities relating to the protection of classified information internally. In doing so, the Department of Defense would surely monitor its own employees for security risks. By requiring contractors to engage in the same monitoring in which the Department of Defense would engage in the absence of contracting, NISPOM § 1-302(a) is plainly a means by which contractors are expected "to help carry out" a federal function. *Watson*, 551 U.S. at 152.

Third, plaintiff's evidentiary argument—that defendants did not actually possess "adverse information"—illustrates precisely why federal officer jurisdiction is appropriate here. If the

---

[5] Defense Security Service, Industrial Security Letter 2011-04 (Sept. 23, 2011), *available at* http://www.dss.mil/documents/facility-clearances/ISL-2011-04.pdf.

basis for a federal contractor's decision to make a mandatory report under NISPOM § 1-302(a) is going to be open to attack on state tort law grounds, then in the absence of a federal forum the contractors subject to NISPOM might elect not to report in the first instance, which would "disable federal officials from taking necessary action" to safeguard classified information. *Id.* Accordingly, application of federal officer jurisdiction to the dispute at hand is consistent with the congressional policy underlying § 1442(a)(1), namely protecting the execution of federal functions in the states by ensuring that persons engaged in federal functions will have access to a federal forum in which to raise federal defenses. Plaintiff's argument essentially creates a defamation exception to federal officer removal by requiring a defendant to prove the truth of his statements before removal is appropriate. There is no basis to conclude that § 1442(a)(1) contemplates or allows such an exception.

In sum, because compliance with NISPOM § 1-302(a) is mandatory, assists with the important federal task of protecting classified information, and invites the risk of state tort litigation that might disable the exercise of federal functions (as this lawsuit aptly illustrates), defendants' JPAS incident report falls within § 1442(a)(1)'s broad "acting under" language.

## B.

Analysis now proceeds to whether there is a causal nexus between the defendants' actions under color of a federal office and the plaintiff's claims. Counts I, IV, and VI specifically cite the filing of the JPAS incident report as the basis for defendants' tort liability, and Count III includes the JPAS incident report as one basis for liability. Am. Comp. ¶¶ 35, 53, 60, 75. Moreover, plaintiff's alleged damages are based in significant part on lost income resulting from an inability to secure work in plaintiff's field because of the JPAS incident report. *See, e.g.,* Am. Comp. ¶ 77. Thus, the causal nexus between defendants' compliance with NISPOM § 1-302(a)

and the claims under Counts I, III, IV, and VI is clear. And because the entire civil action is removable,[6] that Counts II, V, and VII are based on the filing of a police report as opposed to the filing of the JPAS incident report cannot defeat removal. Thus, a sufficient causal nexus exists between plaintiff's allegations and defendants' actions under color of federal office.

## C.

Finally, the analysis concludes by determining whether defendants have a colorable federal defense. Defendants contend that the submission of the JPAS incident report is absolutely privileged. In support of this argument, defendants rely on the Fourth Circuit's decision in *Becker v. Philco Corp.*, 372 F.2d 771, 776 (4th Cir. 1967), which held that "an action for libel will not lie...against a private party fulfilling its governmentally imposed duty to inform." In essence, *Becker* held that where a government contractor "has no discretion and is mandatorily ordered" to report to the government "each suspected compromise of classified information," that contractor's reports are absolutely privileged. *Id.* at 773-74. And, defendants note, *Becker* continues to be applied with respect to incident reports made pursuant to NISPOM § 1-302.[7]

Plaintiff, in turn, argues that *Becker* is distinguishable. Specifically, plaintiff argues that *Becker* does not provide immunity for knowingly false reports, as alleged here. Moreover, whereas *Becker* dealt with a situation in which a contractor reported to the government information that the contractor had received from a third party, here the contractor was the initial

---

[6] *See supra* n.3.

[7] *See, e.g., Ford v. Torres*, No. 08-cv-1153, 2009 WL 537563, at *12 (E.D. Va. Mar. 3, 2009) ("Under the *Becker* decision, then, [defendant] is immune from defamation claims based on a report it was required to file."); *Bridge Tech. Corp. v. Kenjya Grp., Inc.*, 65 Va. Cir. 23, 2004 WL 1318884, at *2-3 (Fairfax Cnty. 2004) (extending *Becker* to reports under NISPOM § 1-302).

source of the reported information. Finally, plaintiff cites *Ford*, *supra* n.7, for the proposition that an individual employee who causes a government contractor company to make a false report does not receive immunity under *Becker*.

Plaintiff's argument misses the mark. As the Fourth Circuit has explained, a defendant seeking removal under § 1442(a)(1) "need not prove that he will actually prevail on his federal immunity defense in order to obtain removal; indeed, one of the most important reasons for removal is to have the validity of the [federal] defense of official immunity tried in a federal court." *Jamison v. Wiley*, 14 F.3d 222, 238 (4th Cir. 1994) (internal quotations omitted). Plaintiff's jurisdictional argument seeks to force defendants to prove that they will prevail on the merits of their defense. That is, plaintiff's view is essentially that defendants must prove that the incident report was not false and that *Becker* applies to the slightly distinguished facts of the instant case. This argument is inconsistent with what *Mesa* requires, which is nothing more than a "colorable" federal defense. 489 U.S. at 133. Here, defendants seek simply "to have the validity of [their federal] defense of official immunity tried in a federal court" by laying out a factual and (entirely plausible) legal basis for the application of the immunity recognized in the *Becker* decision. *Jamison*, 14 F.3d at 238. No doubt, this qualifies as a colorable federal defense.

Nor does plaintiff's reliance on *Ford* alter the conclusion reached here that defendants have a colorable federal defense. Although *Ford* concluded that an individual employee could not receive absolute immunity under *Becker*, the *Ford* decision is not binding on other district courts, which are free to conclude otherwise based on an independent analysis of the caselaw. Moreover, *Ford* is distinguishable on its facts from the instant case such that a different outcome is not outside the realm of possibility. In *Ford*, which was decided on a motion to dismiss, the individual employee who was denied immunity allegedly instructed the company's FSO to file a

false incident report with the government. Here, the individual defendant seeking immunity under *Becker* is the FSO, and it is entirely possible (although neither reached nor decided) that the FSO is subject to mandatory requirements that would justify the application of absolute immunity. Simply put, it may not be clear whether defendant Nassif qualifies for an immunity defense until further factual development or briefing occurs, but for purposes of the motion to remand his federal defense is at least colorable. And, of course, even if Nassif's federal defense were not colorable the result would remain unchanged, as Alliance's colorable federal defense is sufficient to support removal of the entire civil action.[8]

### III.

For the foregoing reasons, it is clear that at the very least (i) defendant Alliance acted under a federal officer, (ii) there is a causal nexus between plaintiff's claims and Alliance's conduct under color of federal office, and (iii) Alliance has a colorable federal defense. Consistent with Supreme Court precedent and the plain language of § 1442(a)(1), this is sufficient to support removal of the instant civil action. Accordingly, plaintiff's motion to remand must be denied, and the action will be referred to the magistrate judge for further proceedings, per the parties' agreement.

An appropriate order will issue.

Alexandria, Virginia
December 21, 2015

/s/

T. S. Ellis, III
United States District Judge

---

[8] *See supra* n.3.

11